## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **VICTORIA JOHNSON,** | ) | **CASE NO. 1:13 CV 2012** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **vs.** | ) | |
| | ) | **DEFENDANT UNIVERSITY HOSPITALS** |
| **UNIVERSITY HOSPITALS** | ) | **PHYSICIAN SERVICES' MOTION FOR** |
| **PHYSICIAN SERVICES,** | ) | **SUMMARY JUDGMENT** |
| | ) | |
| **Defendant.** | ) | |

NOW COMES Defendant University Hospitals Physician Services ("Physician Services"), and moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to grant summary judgment in its favor against Plaintiff Victoria Johnson ("Plaintiff" or "Johnson") on all of her claims. Summary judgment is appropriate because there are no issues of material fact and Physician Services is entitled to judgment as a matter of law.

A Memorandum in Support of this Motion is attached.

Respectfully submitted,

*/s/ Donald C. Bulea*
Kerin Lyn Kaminski (0013522)
Donald C. Bulea (0084158)
GIFFEN & KAMINSKI, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone:    (216) 621-5161
Facsimile:    (216) 621-2399
E-mail:        kkaminski@thinkgk.com
               dbulea@thinkgk.com
***Counsel for Defendant University Hospitals***
***Physician Services***

# TABLE OF CONTENTS

**DEFENDANT UNIVERSITY HOSPITALS PHYSICIAN SERVICES' MOTION FOR SUMMARY JUDGMENT** ............................................................................................... i

**TABLE OF CONTENTS** ................................................................................... ii

**TABLE OF AUTHORITIES** ............................................................................. iii

**MEMORANDUM IN SUPPORT** ...................................................................... 1

**I. INTRODUCTION AND SUMMARY OF ARGUMENT**                              1

**II. STATEMENT OF ISSUES**                                                                        1

**III. STATEMENT OF FACTS**                                                                       1

**IV. LAW AND ARGUMENT** ........................................................................... 11

**A. Standard for Summary Judgment.**                                                       11

**B. Plaintiff Cannot Set Forth a *Prima Facie* Case of Disability Discrimination.**      11

**C. Plaintiff Cannot Set Forth a *Prima Facie* Case of Retaliation**.                   15

**D. Physician Services Terminated Plaintiff's Employment For Legitimate, Non-Discriminatory, and Non-Retaliatory Reasons.**                                                   17

**E. There Is No Evidence of Pretext.**                                                         17

**V. CONCLUSION** ............................................................................................ 20

**VI. CERTIFICATE OF COMPLIANCE WITH L.R. 7.1** ............................. 20

**CERTIFICATE OF SERVICE** ........................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Abdulnour v. Campbell Soup Supply Co., LLC,* 502 F.3d 496, 502 (6th Cir. 2007) .................. 17

*Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ................................ 16

*Bagby v. Covidien*, S.D. Ohio Case No. 1:12-cv-488, 2014 U.S. Dist. LEXIS 34497, * 29-30 (March 17, 2014) ................................................................................ 13

*Bhama v. Mercy Mem. Hosp. Corp.,* 416 Fed.Appx. 542, 550 (6th Cir. 2011). ........................ 18

*Burns v. City of Columbus*, 91 F.3d 836, 844 (6th Cir. 1996) .................................... 12

*Celotex Corp. v. Catrett*, 477 U.S. at 323, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ........................................................................................... 11

*Columbus Civil Serv. Comm. v. McGlone,* 82 Ohio St. 3d 569, 1998 Ohio 410, 697 N.E.2d 204, 206-207 (Ohio 1998) ................................................................................ 11

*Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) .......................................... 16

*Dunaway v. Ford Motor Co.,* 134 Fed.Appx. 872, 878 (6th Cir. 2005) ............................ 15

*Fisher v. Trinova Corp.,* 6th Cir. No. 96-3918, 1998 U.S. App. LEXIS 26249, * 13 (Oct. 13. 1998) ........................................................................................... 12

*Hood v. Diamond Prods., Inc.*, 74 Ohio St. 3d 298, 1996 Ohio 259, 658 N.E.2d 738, 739 (1996) ............................................................................................. 12

*Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) ........................ 12

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) ... 12

*Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001) ................................... 12

*Simpkins v. Specialty Envelope,* 6th Cir. No. 95-3370, 1996 U.S. App. LEXIS 19155, *13 (July 12, 1996) .......................................................................................... 11

*Spengler v. Worthington Cylinders,* 614 F.3d 481, 494 (6th Cir. 2010) ............................ 16

*Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) ............... 12

*Weaver v. Shadoan,* 340 F.3d 398, 405 (6th Cir. 2003) ............................................ 15

*White v. Standard Ins. Co.,* 6th Cir. No. 12-1287, 2013 U.S. App. LEXIS 13368, *7-8 (6th Cir. 2013) ........................................................................................... 15

*Yarberry v. Gregg Appliances, Inc*., S.D. Ohio Case No. 1:12-cv-611, 2014 U.S. Dist. LEXIS 48430, *21 (April 8, 2014) ...................................................................... 13

**Statutes**

42 U.S.C. § 12102 ................................................................................ 13

42 U.S.C. § 12102 (1) ............................................................................ 14

42 U.S.C. § 12102 (2)(A), (B) .................................................................... 14

iii

42 U.S.C. § 12112(a) ................................................................................................ 12

O.R.C. § 4112 .......................................................................................................... 11

O.R.C. § 4112.01(A)(13) ......................................................................................... 12

**Rules**

Fed.R.Civ.P. 56(a). .................................................................................................. 11

Fed.R.Civ.P. 56(c)(1)(A) ........................................................................................ 11

**Regulations**

29 C.F.R. § 1630.2(*l*)(1) (2008) ............................................................................... 13

# MEMORANDUM IN SUPPORT

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Physician Services ended Plaintiff's employment because she unequivocally refused to perform an essential function of her job in the manner in which she was instructed to do so.  No one at Physician Services perceived Plaintiff as being disabled nor did Physician Services take any adverse action against Plaintiff in retaliation for protected activity.  This case should not proceed to a jury.  Physician Services is entitled to judgment as a matter of law.

## II.    STATEMENT OF ISSUES

Plaintiff has made claims against Physician Services for disability discrimination and retaliation under the Americans with Disabilities Act and Ohio law. The issues presented are whether Physician Services regarded Plaintiff as disabled, whether Plaintiff was terminated because of a perceived disability, whether Plaintiff was terminated for engaging in protected activity, or whether Physician Services ended Plaintiff's employment for legitimate, non-discriminatory and non-retaliatory reasons.

## III.    STATEMENT OF FACTS

Plaintiff started her employment with Physician Services in 2007 as a provider enrollment clerk.[1]   In October 2011, Plaintiff was promoted to the position of provider enrollment specialist.[2]   As a specialist, Plaintiff's job duties primarily consisted of enrolling medical treatment providers in the Medicare programs.[3]   Plaintiff did not perform any billing

---

[1] Deposition of Victoria Johnson, pg. 13:5-8 (March 14, 2014) (hereafter referred to as "Plaintiff Dep., pg. __"). The cited portions of Plaintiff's deposition are attached hereto as Exhibit 1.
[2] Plaintiff Dep., pg. 14:16-15:1; 16:12-15.
[3] Plaintiff Dep., pg. 14:2-15.

1

services.[4]  Plaintiff has no formal education, training or background in Medicare or Medicaid and she has no experience with reading or interpreting Medicare laws or regulations.[5]

In order to enroll in Medicare, an application known as a CMS 855-I form ("855-I") must be completed.[6]  Plaintiff learned how to complete the 855-I forms solely through on-the-job training at Physician Services.[7]  Once completed, the 855-I forms are submitted to Cigna Government Services ("CGS"), a government contractor that completes the provider enrollment process for Medicare.[8]  At Physician Services, a group of four (4) provider enrollment specialists work on behalf of the providers associated with University Hospitals ("UH").[9]  The primary job function of Plaintiff and the other 3 provider enrollment specialists at Physician Services is to correctly complete the 855-I forms and submit them to CGS.[10]

From the time she became a specialist in October 2011 through January 2012, Plaintiff completed the 855-I form without any issues.[11]  During this time, at the direction of her bosses, Plaintiff, like all other provider enrollment specialists, was putting her work phone number on the enrollment forms for CGS to call if they had issues or questions on the application.[12]

Section 2B of the 855-I form ("Section 2B") requires a phone number be listed where the provider can be "reached directly."[13]  CGS routinely called the number in Section 2B to verify that it was a phone number at which they could reach the provider.[14]  Physician Services decided

---

[4] Plaintiff Dep., pg. 16:10-11.
[5] Plaintiff's Dep., pg. 13:24-14:13.
[6] Plaintiff's Dep., pg. 13:12-15:10, 53:23-54:21; See also, Medicare Enrollment Application, Physicians and Non-Physician Practitioners, 855-I, Bates No. UHPS-Johnson 1279 – 1307, attached hereto as Exhibit 2; Affidavit of Sheryl Johnson, ¶ 7 (June 4, 2014), attached hereto as Exhibit 3 (hereafter "Sheryl Aff., ¶ ___.").
[7] Plaintiff's Dep., pg. 14:14-15, 16:16-21.
[8] Sheryl Aff., ¶¶ 6-8.
[9] Sheryl Aff., ¶¶ 5, 7.
[10] Plaintiff's Dep., pg. 15:2-19.
[11] Plaintiff's Dep., pg. 18:24-19:11.
[12] Plaintiff's Dep., pg. 19:4-9, 33:23-34:4.
[13] Medicare Enrollment Application, Physicians and Non-Physician Practitioners, 855-I, pg. 5, Bates No. UHPS-Johnson 1284, attached hereto as Exhibit 2; Sheryl Aff., ¶ 7.
[14] Plaintiff's Dep., pg. 52:21-53:7.

2

to use each provider enrollment specialist's phone number in Section 2B for efficiency.  It was the provider enrollment specialists who completed the 855-I forms and therefore it was most efficient for CGS to contact them if there were questions on the application.[15]  Each provider enrollment specialist had the contact information for all the providers at UH and could forward any call to them if CGS needed to talk to the provider directly.[16]  This rarely, if ever, happened.[17]

In February 2012, Plaintiff reported to Physician Services that one of her co-workers was fondling himself.[18]  As a result, Plaintiff's supervisor, Sheryl Johnson ("Sheryl"), and the human resource generalist, Christina Morrison ("Morrison"), immediately wanted Plaintiff to feel comfortable and asked Plaintiff if she wanted to move her desk while her claim was investigated.[19]  Plaintiff told them she did not want to move her seat.[20]  Within days, Sheryl and Morrison completed their investigation.[21]  Neither Morrison nor Sheryl could confirm that Plaintiff's co-worker fondled himself.[22]  The co-worker had a great work record and had worked with and around many women with no complaints in his over five (5) years at Physician Services.[23]  Regardless, they decided to move the co-worker to a different area of the building to assuage Plaintiff's concerns.[24]  Plaintiff never asked Physician Services to do anything more to address her concerns about this co-worker.[25]

---

[15] Sheryl Aff., ¶ 9.
[16] Sheryl Aff., ¶ 9-11.
[17] Plaintiff's Dep., pg. 53:14-19, 55:20-56:6; see also Sheryl Aff., ¶ 11.
[18] Plaintiff's Dep., pg. 20:17-22:19.
[19] Plaintiff's Dep., pg. 26:1-5.
[20] Plaintiff's Dep., pg. 26:6-7.
[21] Plaintiff's Dep., pg. 26:16-21.
[22] Sheryl Aff., ¶ 3; see also Affidavit of Christina Morrison, ¶ 3 (June 4, 2014), attached hereto as Exhibit 4 (hereafter "Morrison Aff., ¶ __").
[23] Morrison Aff., ¶ 4.
[24] Plaintiff's Dep., pg. 26:16-21.
[25] Plaintiff's Dep., pg. 27:6-9.

In March 2012, Plaintiff met with Sheryl and her department manager, Steve Riddle ("Riddle") to go over her 2011 performance evaluation.[26]  The review indicated that Plaintiff did not display a positive attitude; needed a better understanding of the rejection reports; needed to improve her communication with provider contacts; and, she was requested to maintain more professionalism by not nodding off at meetings.[27]

During this March 2011 evaluation meeting, Plaintiff was presented with two corrective actions regarding several 855-I forms she had completed.[28]  Plaintiff disputed the corrective actions.[29]  Plaintiff presented information to Sheryl and Riddle and, according to Plaintiff, they admitted they made a mistake in the corrective actions.[30]  As a result, the two corrective actions were never placed in Plaintiff's 2011 review or her personnel file.[31]

Plaintiff admits that it was a regular practice of hers to sleep while at work,[32] and that her 2011 performance review accurately indicated that she was "nodding off" during meetings.[33]  Plaintiff's sleeping got to the point that on April 3, 2012, Sheryl advised Plaintiff that if she was going to sleep at her desk, she must put a sign up that she is on break.[34]  Then in June 2012, Plaintiff told Sheryl she had to miss work because the medication she was taking caused her to be drowsy.[35]

---

[26] Plaintiff's Dep., pg. 29:16-19.
[27] Plaintiff's Dep., pg. 146:8-154:4; see also Plaintiff's 2011 UH Performance Evaluation, March 6, 2012, Bates No. VJ 000184-000188, attached hereto as Exhibit 5; Morrison Aff., ¶ 6.
[28] Plaintiff's Dep., pg. 29:20-30:16.
[29] Plaintiff's Dep., pg. 30:18-24.
[30] Plaintiff's Dep., pg. 31:19-32:11.  Physician Services disputes this fact but will accept it as true for purposes of this Motion only.
[31] Plaintiff's Dep., pg. 143:1-3, 297:22-25, 318:10-320:3.  It is true the corrective actions were not placed in Plaintiff's 2011 review or personnel file, but Physicians Services' position is that they were not included as a favor to Plaintiff to help her obtain a transfer which she indicated she wanted.  For purposes of this Motion only, Physicians Services accepts Plaintiff's version of the facts in this regard.
[32] Plaintiff's Dep., pg. 41:5-41:8.
[33] Plaintiff's Dep., pg. 153:15-22.
[34] Plaintiff's Dep., pg. 155:5-22; Email, Sheryl Johnson to Victoria Johnson, April 3, 2012 3:36 PM, Bates No. VJ 000085, attached hereto as Exhibit 6; Sheryl Aff., ¶ 13.
[35] Plaintiff's Dep., pg. 38:7-23.

4

Also in June of 2012, Plaintiff began to voice concerns about placing her phone number in Section 2B.  Up until that time, she had put her number on the form without issue.[36]  In June, some of the 855-I forms Plaintiff completed were returned because she refused to answer CGS's calls to verify that the provider could be reached at the phone number in Section 2B.[37]  Plaintiff admits that the 855-I forms were rejected because she did not answer CGS's calls.[38]  Once she answered the CGS calls, all of the 855-I forms were approved.[39]

On July 6, 2012, one of Plaintiff's co-workers observed her sleeping at her desk, with a blanket, for over 15 minutes.[40]  Plaintiff slept for so long that her co-worker had to wake her up and ask if she was okay.[41]  On July 17, 2012, Morrison again found Plaintiff sleeping at her desk and had to wake her up.[42]

About the same time in July 2012, Plaintiff began refusing to verify to CGS that the providers could be reached at her phone number.[43]  Plaintiff decided it was "unethical" to use her number on the form.[44]  Plaintiff called UH's compliance hotline and made a complaint about the requirement that she use her phone number.[45]

Carole Meisler, the Physician Services Compliance Officer ("Meisler"), was assigned to investigate Plaintiff's complaint.[46]  On July 17, 2012, Meisler called CGS to discuss Plaintiff's concerns.[47]  After this conversation, Meisler emailed Plaintiff and advised her that she spoke to

---

[36] Plaintiff's Dep., pg. 33:23-34:21.
[37] Plaintiff's Dep., pg. 35:9-37:1.
[38] Plaintiff's Dep., pg. 36:17-22.
[39] Plaintiff's Dep., pg. 37:17-38:2.
[40] Plaintiff's Dep., pg. 175:9-176:14; see also Memorandum from Kristen Johnson to Victoria Johnson, Bates No. UHPS-Johnson 1388, attached hereto as Exhibit 7; Sheryl Aff., ¶ 14.
[41] Plaintiff's Dep., pg. 175:9-176:14; see also Memorandum from Kristen Johnson to Victoria Johnson, Bates No. UHPS-Johnson 1388, attached hereto as Exhibit 7; Sheryl Aff., ¶ 14.
[42] Plaintiff's Dep., pg. 174:17-175:7; see also Morrison Aff., ¶ 7.
[43] Plaintiff's Dep., pg. 43:17-44:14.
[44] Plaintiff's Dep., pg. 168:16-169:5.
[45] Plaintiff's Dep., pg. 48:9-15.
[46] Plaintiff's Dep., pg. 227:20-229:7.
[47] Deposition of Carole Meisler, pg. 28:2-29:22 (May 29, 2014). The cited portions of Meisler's deposition are

CGS and they explained there was no expectation a provider would answer the phone; rather, the expectation is that support personnel like Plaintiff would answer and relay messages to the provider as needed.[48]  Plaintiff admitted that "CGS recognizes that often support personnel will be able to handle these queries."[49]

Despite receiving this reassurance from Meisler, Plaintiff engaged in email exchanges with several other CGS employees about Section 2B.  On July 19, 2012, Plaintiff forwarded Meisler an email she received from CGS employee Un Kim.[50]  Meisler called Ms. Kim, who told her there was no problem with the Physician Services procedure.  Meisler updated Plaintiff after this conversation and reiterated that she "was very clear with [Ms. Kim] regarding [Plaintiff's] concerns and [Ms. Kim] assured me that [Physician Services] complies with CGS's expectations."[51]  Rather than accepting Meisler's advice, Plaintiff told Meisler that she would follow-up with CGS to clarify their expectations.[52]

On July 20, 2012, Plaintiff emailed two additional, different CGS employees and asked each to clarify what phone number CGS expected to be placed in Section 2B.[53]  In these exchanges, Plaintiff explicitly told CGS that the providers were located in a different building than her, as a result they could not be reached at her number, and that she had been instructed to say she would pass along any message to the provider.[54]  One of the CGS employees stated the

---

attached hereto as Exhibit 24.

[48] Plaintiff's Dep., pg. 176:16-178:24; see also Email, Carole Meisler to Victoria Johnson, July 17, 2012 6:50 PM, Bates No. UHPS-Johnson 1120, attached hereto as Exhibit 8.

[49] Plaintiff's Dep., pg. 178:12-18.

[50] Email, Victoria Johnson to Carole Meisler, July 19, 2012 3:09 PM, Bates No. UHPS-Johnson 1080-1085, attached hereto as Exhibit 9; Sheryl Aff., ¶ 15.

[51] Email, Carole Meisler to Victoria Johnson, July 19, 2012 4:58 PM, Bates No. UHPS-Johnson 1080-1085, attached hereto as Exhibit 9; Sheryl Aff., ¶ 15.

[52] Email, Victoria Johnson to Carole Meisler, July 20, 2012 7:09 AM, Bates No. UHPS-Johnson 1080-1085, attached hereto as Exhibit 9; Sheryl Aff., ¶ 15.

[53] Plaintiff's Dep., pg. 185:24-196:25; Email, Victoria Johnson to Shamekia McLaughlin, July 20, 2012 6:56 AM, Bates Nos. VJ 000190 – VJ 000198, attached hereto as Exhibit 10; Sheryl Aff., ¶ 16.

[54] Plaintiff's Dep., pg. 185:24-188:5; see also Email, Victoria Johnson to Shamekia McLaughlin, July 23, 2012 11:36 AM, Bates No. VJ 000193 – VJ 000194, attached hereto as Exhibit 10; Sheryl Aff., ¶ 16; Email, Victoria

number in 2B "should be a number that either a voicemail or a person can identify that the number is a valid number to contact the provider."[55]  Despite the fact that Plaintiff could and did know how to contact the providers if needed,[56] she advised Riddle and Sheryl that she would no longer put her number in Section 2B.[57]

On July 23, 2012, Cheryl Wahl, UH's Chief Compliance Officer ("Wahl"), wrote Plaintiff a letter to address her on-going concerns about putting her phone number Section 2B.[58] Wahl specifically advised Plaintiff that Meisler had contacted CGS and confirmed that Physician Services' current practice of using the provider enrollment specialist's phone numbers in Section 2B was "both allowable and correct."[59]

Despite having received written assurances from Meisler and Wahl, on July 24, 2012, Plaintiff again forwarded an email she received from CGS to Riddle, Sheryl, Meisler, and Wahl and questioned whether Physician Services' practice was acceptable.[60]  Later that day, Meisler spoke to CGS for a third time.  This time, Meisler talked to a CGS supervisor who again advised that it was acceptable for Plaintiff to answer the phone on behalf of the provider because Plaintiff, as part of her job, could get any message to the provider.[61]  Meisler relayed this

---

Johnson to Shamekia McLaughlin, July 23, 2012 12:05 PM, Bates No. VJ 000191, attached hereto as Exhibit 10; Sheryl Aff., ¶ 16; Plaintiff's Dep., pg. 207:6-212:20; see also Email, Victoria Johnson to Andrew Baumann, July 20, 2012 9:50 AM, Bates No. UHPS-Johnson 1133, attached hereto as Exhibit 11; Sheryl Aff., ¶ 17; Morrison Aff., ¶8.
[55] Email, Victoria Johnson to Andrew Baumann, July 20, 2012 9:50 AM, Bates No. UHPS-Johnson 1133, attached hereto as Exhibit 11; Sheryl Aff., ¶ 17; Morrison Aff., ¶ 8.
[56] Plaintiff's Dep., pg. 55:1-56:57:25.
[57] Victoria Johnson to Steve Riddle, et al., July 20, 2012 10:50 AM, Bates No. UHPS-Johnson 1132-1133, attached hereto as Exhibit 11; Sheryl Aff., ¶ 17.
[58] Plaintiff's Dep., pg. 227:15-228-7; see also Letter Cheryl Wahl to Victoria Johnson, July 23, 2012, Bates No. UHPS-Johnson 1129, attached hereto as Exhibit 12.
[59] Letter Cheryl Wahl to Victoria Johnson, July 23, 2012, Bates No. 1129, attached hereto as Exhibit 12.
[60] Plaintiff's Dep., pg. 185:24-186:25; see also Email, Victoria Johnson to Steve Riddle, et al., July 24, 2012 7:27 AM, Bates No. VJ 000190, attached hereto as Exhibit 10; Sheryl Aff., ¶ 16.
[61] Plaintiff's Dep., pg. 198:25-199:14; see also Email, Carole Meisler to Victoria Johnson, July 24, 2012 10:14 AM, Bates No. UHPS-Johnson 1393, attached hereto as Exhibit 13; Sheryl Aff., ¶ 18.

information to Plaintiff.[62]  Despite this clear direction, Plaintiff refused to put her number in Section 2B.[63]

On July 26, 2012, Plaintiff met with Sheryl, Riddle, and Morrison.[64] During this meeting, Plaintiff was advised that because she was falling asleep at her desk, she was being referred to UH's Employee Assistance Program to undergo a fitness for duty evaluation.[65]  Plaintiff did not go to the evaluation that day, but instead, immediately called her doctor and had him fill out the paperwork for her to go on FMLA leave from July 26, 2012 through August 8, 2012.[66]  Dr. Headen's reason for the FMLA was that she needed to be off work because of anxiety.[67]  Plaintiff agreed with Dr. Headen's assessment.[68]  Thus, the request for a fit for duty examination was timely as it is admitted by Plaintiff and her physician that she could not work as of July 26, 2012.

Plaintiff was referred to an independent physician, Dr. Pallas, to complete the fit for duty evaluation.  Dr. Pallas determined that Plaintiff should see a psychiatrist.[69]  Plaintiff complied and saw Dr. Dutton.  He gave Plaintiff paperwork indicating that she could return to work on September 4, 2012.[70]  Plaintiff agreed with Dr. Dutton's assessment, *i.e.* that she could return to work on September 4, 2012.[71]  Again, this confirms Plaintiff's fit for duty referral was timely as, according to two independent physicians, Plaintiff needed to be off work.

---

[62] Plaintiff's Dep., pg. 198:25-199:14; see also Email, Carole Meisler to Victoria Johnson, July 24, 2012 10:14 AM, Bates No. UHPS-Johnson 1393, attached hereto as Exhibit 13; Sheryl Aff., ¶ 18.
[63] Plaintiff's Dep., pg. 200:4-203:4; see also Email, Victoria Johnson to Shamekia McLaughlin, July 24, 2012 12:46 PM, Bates No. UHPS-Johnson 1145, attached hereto as Exhibit 14.
[64] Plaintiff's Dep., pg. 62:23-63:7.
[65] Plaintiff's Dep., pg. 63:7-17.
[66] Plaintiff's Dep., pg. 63:19-25, 115:18-116:5; see also Certification of Physician, FMLA Medical Leave of Absence, July 26, 2012, Bates No. VJ 000166, attached hereto as Exhibit 15.
[67] Certification of Physician, FMLA Medical Leave of Absence, July 26, 2012, Bates No. VJ 000166, attached hereto as Exhibit 15.
[68] Plaintiff's Dep., pg. 118:24-120:25.
[69] Plaintiff's Dep., pg. 69:20-25.
[70] Plaintiff's Dep., pg. 70:1-12, 303:1-306:25; see also FMLA Medical Leave of Absence, August 4, 2012, Bates No. VJ 000082, attached hereto as Exhibit 16.
[71] Plaintiff's Dep., pg. 70:1-12.

Plaintiff did not continue to treat with Dr. Dutton. On August 21, 2012, UH became aware that Plaintiff was no longer under the care of Dr. Dutton.[72] As a result, on August 30, 2012, UH wrote a letter to Plaintiff explaining that because she is no longer under Dr. Dutton's care, she would need to provide a new Medical Certificate for her FMLA to continue and if she failed to provide one, her FMLA leave would end on August 21, 2012.[73] Plaintiff admitted that she received this letter, but did not provide any further documentation to extend her FMLA leave nor did she return to work in September 2012.[74]

On October 1, 2012, having heard nothing from Plaintiff and Plaintiff having not come back to work, Morrison advised Plaintiff that her leave ended August 21, 2012, and without further documentation to extend her leave, there was no reason for Plaintiff to remain off work.[75] Morrison told Plaintiff that if she did not return to work on October 8, 2012 her employment would be terminated.[76]

In response, Plaintiff wrote Morrison and provided a list of expectations upon her return to work.[77] In this letter, Plaintiff said that while she would return to work, she would not follow her supervisors' instructions to place her work phone number in Section 2B.[78]

On October 8, 2012, Plaintiff reported back to work at Physician Services and met with Morrison and Angelique Sunagel, Physician Services' Director of Human Resources

---

[72] Plaintiff's Dep., pg. 308:25-310:5; see also, Letter, Kara Ladaika to Victoria Johnson, August 30, 2012, Bates No. UHPS-Johnson 1096, attached hereto as Exhibit 17; Morrison Aff., ¶ 9.
[73] Plaintiff's Dep., pg. 308:25-310:5; Letter, Kara Ladaika to Victoria Johnson, August 30, 2012, Bates No. UHPS-Johnson 1096, attached hereto as Exhibit 17; Morrison Aff., ¶ 9.
[74] Plaintiff's Dep., pg. 308:25-310:5.
[75] Plaintiff's Dep., pg. 310:11-311:17; Letter, Christina Morrison to Victoria Johnson, October 1, 2012, Bates No. UHPS-Johnson 1093, attached hereto as Exhibit 18; Morrison Aff., ¶ 10.
[76] Letter, Christina Morrison to Victoria Johnson, October 1, 2012, Bates No. UHPS-Johnson 1093, attached hereto as Exhibit 18; Morrison Aff., ¶ 10.
[77] Plaintiff's Dep., pg. 262:7-263:5; Letter, Victoria Johnson to Christina Morrison, Bates No. UHPS-Johnson 1094-1095, attached hereto as Exhibit 19; Morrison Aff., ¶ 11.
[78] Letter, Victoria Johnson to Christina Morrison, Bates No. UHPS-Johnson 1094-1095, attached hereto as Exhibit 19; Morrison Aff., ¶ 11.

("Sunagel").[79]  During this meeting, Plaintiff explicitly said that she would not complete the 855-I forms as instructed by her supervisors, *i.e.* she would not put her phone number in Section 2B.[80] Morrison and Sunagel told Plaintiff that her concerns about the 855-I forms were previously addressed by Wahl and Meisler and that she would be expected to perform her job duties as directed.[81]  Plaintiff still refused.[82]  Sunagel warned Plaintiff that if she continued to refuse to perform her duties, her employment would be terminated.[83]  Sunagel even offered Plaintiff, on two occasions, 24 hours to reconsider her decision.[84]  Plaintiff said she did not need 24 hours to reconsider and that she was not going to complete the 855-I forms as instructed.[85]  As such, Physician Services terminated Plaintiff's employment on October 8, 2012 for refusal to perform an essential function of her job.[86]

Before, during, and after Plaintiff's objection to Physician Services' practice of putting the provider enrollment specialists' number in Section 2B, CGS has continued to accept and process the 855-I without issue.[87]  It is obvious therefore, that CGS is well aware of Physician Services' practice and has no issue with it.  To this day, Physician Services continues this practice, CGS continues to process the 855-Is, and no one from Physician Services has been advised that this practice is problematic in any way.[88]

---

[79] Plaintiff's Dep., pg. 261:13-16; see also Morrison Aff., ¶ 12; Affidavit of Angelique Sunagel, ¶ 3 (June 4, 2014), attached hereto as Exhibit 20 (hereafter "Sunagel Aff., ¶ ___.").
[80] Plaintiff's Dep., pg. 261:17-262:2; Morrison Aff., ¶ 12; Sunagel Aff., ¶¶ 3-5.
[81] Letter, Christina Morrison to Victoria Johnson, October 8, 2012, Bates No. UHPS-Johnson 1002-1003, attached hereto as Exhibit 21; Morrison Aff., ¶¶ 12-13; Sunagel Aff., ¶¶ 3-5.
[82] Plaintiff's Dep., pg. 74:14-76:13, 261:13-262:2; Morrison Aff., ¶¶ 12-13; Sunagel Aff., ¶¶ 3-5.
[83] Sunagel Aff., ¶ 4.
[84] Sunagel Aff., ¶ 5; Morrison Aff., ¶ 12.
[85] Plaintiff's Dep., pg. 266:19-268:4; Morrison Aff., ¶ 12, Sunagel Aff., ¶¶ 3, 5.
[86] Letter, Christina Morrison to Victoria Johnson, October 8, 2012, Bates No. UHPS-Johnson 1002-1003, attached hereto as Exhibit 21; Morrison Aff., ¶¶ 12-13; Sunagel Aff., ¶¶ 3-5.
[87] Plaintiff's Dep., pg. 195:14-197:25; Sheryl Aff., ¶ 12.
[88] Sheryl Aff., ¶ 12.

# IV.  LAW AND ARGUMENT

## A.  Standard for Summary Judgment.

Summary judgment is proper if the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[89]  Summary judgment is proper if Plaintiff fails to provide sufficient evidence to establish the existence of any essential element she has the burden to prove at trial.[90]  Plaintiff must present sufficient evidence that a jury could reasonably find in her favor.[91]  The mere existence of a scintilla of evidence to support Plaintiff's position is insufficient.  In this case, there are no genuine issues of material fact.  Plaintiff cannot meet her burden to show Physician Services regarded her as disabled, that she suffered an adverse employment action because of any perceived disability or any protected activity.  As such, Physician Services is entitled to judgment as a matter of law.

## B.  Plaintiff Cannot Set Forth a *Prima Facie* Case of Disability Discrimination.

Plaintiff asserts claims for disability discrimination under the American with Disabilities Act ("ADA") and Ohio Revised Code Chapter 4112, *et seq.*[92]  The ADA and the Ohio Revised Code prohibit an employer from discriminating against an employee because of a disability.[93]  An employer that discharges an employee *without knowledge* of the employee's disability is not liable for disability discrimination.[94] In order to make a successful ADA claim, Plaintiff must show that Physician Services took an adverse action against her "on the basis of disability." 42

---

[89] Fed.R.Civ.P. 56(a).
[90] *Celotex Corp. v. Catrett*, 477 U.S. at 323, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
[91] Fed.R.Civ.P. 56(c)(1)(A).
[92] Amended Complaint, ¶¶ 22-28.  Plaintiff's claims for disability discrimination under the ADA and O.R.C. § 4112, *et seq.* may be considered together "[g]iven the similarity of the language used in the ADA and Chapter 4112." *See Columbus Civil Serv. Comm. v. McGlone*, 82 Ohio St. 3d 569, 1998 Ohio 410, 697 N.E.2d 204, 206-207 (1998) (the Ohio Supreme Court held that federal regulations and case law are applicable to disability discrimination claims brought under Chapter 4112).
[93] 42 U.S.C. § 12112(a).
[94] *Simpkins v. Specialty Envelope,* 6th Cir. No. 95-3370, 1996 U.S. App. LEXIS 19155, *13 (July 12, 1996).

11

U.S.C. § 12112(a).  In the Sixth Circuit, this language requires Plaintiff to show that her disability was a but-for cause of the adverse action. ***Lewis v. Humboldt Acquisition Corp***., 681 F.3d 312, 321 (6th Cir. 2012). As Plaintiff lacks direct evidence of a discriminatory motive, she must show causation through the familiar burden-shifting analysis of ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

In order to establish a *prima facie* case of disability discrimination, Plaintiff must show (1) that she is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and (3) who was discriminated against solely because of the disability.[95]  "Where the plaintiff cannot prove employer knowledge or belief [of disability] at the *prima facie* stage, there is no reasonable basis for extending to the plaintiff the inference that the employer discriminated 'solely because of' the plaintiff's disability."[96]

In this case, Plaintiff does not claim to be disabled – rather, she claims Physician Services regarded her as disabled.[97]  An employee may satisfy the first requirement of a *prima facie* case by showing that, although she was not disabled, she was "regarded as having a physical or mental impairment." O.R.C. § 4112.01(A)(13).  "[A]n individual may fall into the definition of one regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual  is perfectly able to meet the job's duties." ***Ross v. Campbell Soup Co***., 237 F.3d 701, 706 (6th Cir. 2001).  As stated in the current version of the ADA, "[a]n individual meets the requirement of

---

[95] ***Talley v. Family Dollar Stores of Ohio, Inc***., 542 F.3d 1099, 1105 (6th Cir. 2008); ***see also Hood v. Diamond Prods., Inc***., 74 Ohio St. 3d 298, 1996 Ohio 259, 658 N.E.2d 738, 739 (1996) (substantially same elements necessary to establish *prima facie* case under Ohio law).

[96] ***Fisher v. Trinova Corp.***, 6th Cir. No. 96-3918, 1998 U.S. App. LEXIS 26249, * 13 (Oct. 13. 1998), ***citing Burns v. City of Columbus***, 91 F.3d 836, 844 (6th Cir. 1996);

[97] Amended Complaint, ¶¶ 22-28.

'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102; *see also* 29 C.F.R. § 1630.2(*l*)(1) (2008). Thus, to be successful, Plaintiff must show that Physician Services terminated her employment "because of an actual or perceived physical or mental impairment." ***See e.g., Yarberry v. Gregg Appliances, Inc***., S.D. Ohio Case No. 1:12-cv-611, 2014 U.S. Dist. LEXIS 48430, *21 (April 8, 2014).

There is no evidence that Physician Services terminated Plaintiff because of an actual or perceived physical or mental impairment. Indeed, Plaintiff herself can not identify what impairment she thinks Physician Services perceived her as having.  In her deposition, Plaintiff was asked who she thought perceived her as disabled and from what impairment Physician Services believed she suffered. The only response Plaintiff could articulate is that she was sent to have a fit for duty evaluation because she was sleeping at her desk.[98]  However, merely taking action to ensure Plaintiff could continue to work after she repeatedly fell asleep at work does not qualify as being "regarded as disabled" under the ADA.  ***See e.g., Bagby v. Covidien***, S.D. Ohio Case No. 1:12-cv-488, 2014 U.S. Dist. LEXIS 34497, * 29-30 (March 17, 2014) (noting that an plaintiff telling his employer he was "stressed out" to the point of having his work and sleep patterns be affected does not, as a matter of law, qualify as a disability or provide sufficient evidence that an employer regarded him as disabled).

Rather, to satisfy the first prong of her *prima facie* case, Plaintiff must put forth evidence that she has "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . . ; (B) a record of such an impairment; or (C) [is] regarded as having such

---

[98] Plaintiff's Dep., pg. 246:9-252:2.

13

an impairment…." 42 U.S.C. § 12102 (1).[99]   In this case, the evidence is undisputed that Plaintiff's falling asleep at her desk does not and cannot meet these requirements.

On July 26, 2012, Plaintiff was referred to a fit for duty evaluation because she was repeatedly found asleep at her desk.[100]   Plaintiff herself admitted that she couldn't perform her job duties at that time:

> **Q.** And on the day that they sent you for [the fit for duty evaluation] you went to your doctor to say you couldn't work; right?
>
> **A.** I was stressed out about the whole situation.
>
> **Q.** Okay. And you couldn't work; right?
>
> **A.** Yes. I couldn't work.[101]

This testimony is also supported by the documents in evidence, which demonstrate that Plaintiff initiated an FMLA leave on July 26, 2012.  On the same day Physician Services referred her to a fit for duty evaluation, Plaintiff's physician, Dr. Headen, completed FMLA paperwork ordering Plaintiff off work until August 8, 2012. [102]   Then, on August 4, 2012, Plaintiff's psychiatrist, Dr. Dutton, ordered that Plaintiff should remain off work until September 4, 2012, but that she could return to work thereafter.[103]   Plaintiff testified that she agreed with Dr. Dutton and was only able

---

[99] Under the amended version of the ADA, effective January 1, 2009, "major life activities include, but are not limited to, caring for one self, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working" and also include "the operation of a major bodily function, including but not limited to functions of the immune system, normal cell growth, digestive, bowel, bladder, neurologic, brain, respiratory, circulatory, endocrine and reproductive functions." 42 U.S.C. § 12102 (2)(A), (B).

[100] Plaintiff's Dep., pg. 63:7-17.

[101] Plaintiff's Dep., pg. 251:20-252:2.

[102] Plaintiff's Dep., pg. 115:18-116:5; see also Certification of Physician, FMLA Medical Leave of Absence, July 26, 2012, Bates No. VJ 000166, attached hereto as Exhibit 15.

[103] Plaintiff's Dep., pg. 70:1-12, 303:15-306:23; see also FMLA Medical Leave of Absence, August 4, 2012, Bates No. VJ 000082, attached hereto as Exhibit 16.

14

to return to work on September 4, 2012.[104]  Thus, any referral for a fit for duty evaluation was necessarily not only timely, but proper.

When Plaintiff failed to come back to work, Physician Services, rather than terminate her, took the additional step of requesting that she return to work on October 8, 2012.[105]  Plaintiff came to work that day.  She suffered no adverse consequences for having been off work. Her employment ended that day because she refused to perform an essential function of her job as instructed by her supervisors.[106]  Physician Services did not think Plaintiff was disabled and in fact specifically requested that she return to work after her FMLA ended.  These facts are undisputed.  Therefore, there is no genuine issue of material fact that Plaintiff was not regarded by Physician Services as being disabled.  As such, Plaintiff cannot set forth a *prima facie* case for disability discrimination and Physician Services is entitled to judgment as a matter of law.[107]

### C.  Plaintiff Cannot Set Forth a *Prima Facie* Case of Retaliation.

"To establish a *prima facie* retaliation case under the ADA a plaintiff must show that she engaged in a protected activity and suffered an adverse employment action, and that there was a causal link between the protected activity and the adverse employment action." ***White v. Standard Ins. Co.***, 6th Cir. No. 12-1287, 2013 U.S. App. LEXIS 13368, *7-8 (6th Cir. 2013) (internal citations omitted). If Plaintiff presents indirect evidence to establish her *prima facie* case, the burden shifts to Physician Services to point to evidence of a legitimate, non-discriminatory, non-retaliatory reason for her termination, after which Plaintiff must show by a

---

[104] Plaintiff's Dep., pg. 70:1-12, 303:15-306:23; see also FMLA Medical Leave of Absence, August 4, 2012, Bates No. VJ 000082, attached hereto as Exhibit 16.
[105] Letter, Christina Morrison to Victoria Johnson, October 1, 2012, Bates No. UHPS-Johnson 1093, attached hereto as Exhibit 18; Morrison Aff., ¶ 10.
[106] Letter, Christina Morrison to Victoria Johnson, October 8, 2012, Bates No. UHPS-Johnson 1002-1003, attached hereto as Exhibit 21; Morrison Aff., ¶¶ 12-13; Sunagel Aff., ¶¶ 3-5.
[107] Where there are no genuine issues of material fact, even a subjective issue like Physician Services' motive is proper for resolution on summary judgment, since the Court is not required to weigh evidence or make credibility determinations. ***Dunaway v. Ford Motor Co.***, 134 Fed.Appx. 872, 878 (6th Cir. 2005); ***Weaver v. Shadoan***, 340 F.3d 398, 405 (6th Cir. 2003).

15

preponderance of the evidence that the proffered legitimate reason was not the true reason for her termination, but merely a pretext for retaliation. *Id*.

There is no dispute that Plaintiff engaged in protected activity by filing her charge of discrimination on October 4, 2012, nor is there a dispute that Physician Services had knowledge of her activity.[108]  In fact, before returning to work on October 8, 2012, Plaintiff made sure to tell Morrison that she had filed a charge of discrimination.[109]  However, Plaintiff cannot meet her burden to show a causal connection between her protected activity and termination.  "To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." ***Dixon v. Gonzales***, 481 F.3d 324, 333 (6th Cir. 2007).  As noted by the Sixth Circuit, "temporal proximity, standing alone, is not enough to establish a causal connection for a retaliation claim."  ***Spengler v. Worthington Cylinders,*** 614 F.3d 481, 494 (6th Cir. 2010).

There are no facts to demonstrate a causal connection.  In deposition, Plaintiff provided nothing but sheer speculation that her termination was related to protected activity.[110]  Mere "conjecture" and "personal belief" are insufficient to withstand summary judgment. ***Arendale v. City of Memphis***, 519 F.3d 587, 605 (6th Cir. 2008).  As discussed *infra,* given that the undisputed evidence shows that Plaintiff was terminated after she repeatedly and flatly refused to perform her job duties as instructed, she cannot now say that her refusal, after she filed a charge, can be the basis to establish a causal connection between her protected activity and her termination. If allowed, all people who file charges could then the next day refuse to do their job

---

[108] Plaintiff's Dep., pg. 262:7-263:5; Letter, Victoria Johnson to Christina Morrison, October 5, 2012, Bates No. UHPS-Johnson 1094-1095, attached hereto as Exhibit 19; Morrison Aff., ¶ 11.
[109] Plaintiff's Dep., pg. 262:7-263:5; Letter, Victoria Johnson to Christina Morrison, October 5, 2012, Bates No. UHPS-Johnson 1094-1095, attached hereto as Exhibit 19; Morrison Aff., ¶ 11.
[110] Plaintiff's Dep., 296:11-299:9.

as instructed, suffer an adverse action, and then claim retaliation.  As such, Physician Services is entitled to judgment as a matter of law.

### D. Physician Services Terminated Plaintiff's Employment For Legitimate, Non-Discriminatory, and Non-Retaliatory Reasons.

The sole reason Physician Services terminated Plaintiff's employment was her refusal to perform a primary function of her job as instructed by her supervisors.  On October 8, 2012, Plaintiff reported back to work at Physician Services and met with Morrison and Sunagel. During this meeting, the focus of the discussion was Plaintiff's refusal to complete the 855-I forms as instructed.  Plaintiff refused to follow the direct instructions of her supervisors in violation of Physician Services policy.  As such, she was terminated for insubordination.[111]

### E.  There Is No Evidence of Pretext.

Physician Services has proffered a legitimate, non-discriminatory, non-retaliatory reason for Plaintiff's termination, so the burden shifts back to Plaintiff "to *prove by a preponderance of the evidence* that the legitimate reasons offered … were not its true reasons, but were a pretext for discrimination."[112]   There must be "a sufficient basis *in the evidence*" for rejecting an employer's stated explanation for its action.[113]   Summary judgment in favor of Physician Services is appropriate if Plaintiff is unable to demonstrate pretext sufficient to rebut Physician Services' legitimate reasons for her termination.

---

[111] Letter, Christina Morrison to Victoria Johnson, October 8, 2012, Bates No. UHPS-Johnson 1002-1003, attached hereto as Exhibit 21; Morrison Aff., ¶¶ 12-13; Sunagel Aff., ¶¶ 3-5; see also Corrective Action Form for Victoria Johnson, October 8, 2012, Bates No. UHPS Johnson 1004, attached hereto as Exhibit 22; Morrison Aff., ¶ 16; UH Policy & Procedure, HR-72-Corrective Action, Attachment B, No. 9, Bates Nos. UHPS-Johnson 1121-1128, attached hereto as Exhibit 23; Morrison Aff., ¶ 17.
[112] ***Abdulnour v. Campbell Soup Supply Co., LLC,*** 502 F.3d 496, 502 (6th Cir. 2007) (emphasis in original).
[113] ***Id.***  (emphasis in original).

To establish that Physician Services' proffered reason is mere pretext, Plaintiff must prove that the reason: (1) has no basis in fact; (2) did not actually motivate Plaintiff's termination; or (3) was insufficient to warrant Plaintiff's termination.[114]

Plaintiff cannot meet this burden because her own testimony proves that she was terminated solely because she refused to perform her job duties as instructed:

> **Q.** And that is what you did [] full-time is enroll Medicare and Medicaid for providers?
>
> **A.** Yes, that was my primary function.[115]
>
> *      *      *
>
> **Q.** Okay. And what was your talk with Christine [Morrison] and Angelique [Sunagel]?
>
> **A.** Again, about the Medicare applications.  I told them that I didn't want to complete the application with putting my personal phone number in section 2B.
>
> *      *      *
>
> **Q.** Okay.  And so you told them that you weren't going to fill out [the 855-I forms] the way they wanted you to; correct?
>
> **A.** Correct.
>
> Mr. Herron: Objection. Go ahead.
>
> **Q.** And they made it clear how they wanted it filled out; right?
>
> **A.** Well, yes, they made it clear how they wanted it filled out.
>
> *      *      *
>
> **Q.** And so you indicated to them that you weren't going to do it the way that they wanted you to; correct?
>
> **A.** Correct.

---

[114] ***Bhama v. Mercy Mem. Hosp. Corp.,*** 416 Fed.Appx. 542, 550 (6th Cir. 2011).
[115] Plaintiff's Dep., pg. 15:7-10.

**Q.** And what happened?

**A.** She told me that if I needed 24 hours to reconsider to let her know.  And I told her that I did not need 24 hours to reconsider.  And she said, well, if that's the case, then we have to terminate you.

&ast;    &ast;    &ast;

**Q.** Anything else happen?

**A.** No, I went and packed my stuff at my desk and left.[116]

&ast;    &ast;    &ast;

**Q.** Okay.  So when you went back in on October 8th to go to work, you were planning on starting work that day; correct?

**A.** Yes.

**Q.** And the only reason that you didn't continue your job is because you were asked to fill out the –

**A.** Medicare application.

**Q.**  – Medicare application using your phone number; is that correct?

**A.** Correct.

**Q.** And had you agreed to do that you would have been working there as of October 8th; correct?

**A.** I assume so.[117]

The evidence leaves no dispute that Plaintiff's insubordination was well documented, factually accurate, sufficient to motivate her termination and did in fact motivate her termination.[118]  In Plaintiff's own words, if she had followed her supervisor's instructions, she

---

[116] Plaintiff's Dep., pg. 74:14-76:13.

[117] Plaintiff's Dep., pg. 261:13-262:2.

[118] Letter, Christina Morrison to Victoria Johnson, October 8, 2012, Bates No. UHPS-Johnson 1002-1003, attached hereto as Exhibit 21; Morrison Aff., ¶¶ 12-13; Sunagel Aff., ¶¶ 3-5; see also Corrective Action Form for Victoria Johnson, October 8, 2012, Bates No. UHPS-Johnson 1004, attached hereto as Exhibit 22; Morrison Aff., ¶ 16.

would still be working at Physician Services. Thus, there can be no dispute that Plaintiff's termination had nothing to do with a perceived disability or her protected activity.  There is no evidence of pretext and Physician Services is entitled to judgment as a matter of law.

# V.  CONCLUSION

For all the foregoing reasons, Physician Services is entitled to summary judgment on all of Plaintiff's claims as a matter of law.

Respectfully submitted,

*/s/ Donald C. Bulea*
Kerin Lyn Kaminski (0013522)
Donald C. Bulea (0084158)
GIFFEN & KAMINSKI, LLC
1300 E. 9th Street, Suite 1600
Cleveland, OH 44114
Telephone:     (216) 621-5161
Facsimile:     (216) 621-2399
E-Mail:        kkaminski@thinkgk.com
               dbulea@thinkgk.com

*Attorneys for Defendant University Hospitals*
*Physician Services*

# VI.    CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

I certify that the foregoing Brief in Support of Defendant University Hospitals Physician Services' Motion for Summary Judgment complies with the page limitation set forth Local Rule 7.1 for cases assigned to the standard track, excluding the exhibits which are separate from the Brief.

*/s/ Donald C. Bulea*
Kerin Lyn Kaminski (0013522)
Donald C. Bulea (0084158)
*Attorneys for Defendant University Hospitals*
*Physician Services*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2014, a copy of the foregoing *Defendant University Hospital Physician Services' Motion for Summary Judgment* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system upon the following Parties:

Mark P. Herron, Counsel for Plaintiff Victoria Johnson at herronlaw@msn.com.

*/s/ Donald C. Bulea*
Kerin Lyn Kaminski (0013522)
Donald C. Bulea (0084158)
***Counsel for Defendant University Hospitals Physician Services***